Not Intended for print Publication

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:06CR00025 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **BRIAN DAVID McCRAE**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for the United States of America; Michael A. Bragg, Bragg Law PLC, Abingdon, Virginia, for Defendant Brian David McCrae.*

For the reasons stated below, and pursuant to the magistrate judge's recommendation, I will deny the defendant's Motion to Suppress.

I

The defendant, Brian David McCrae, is charged along with a co-defendant, Sean Christopher Osborne, with robbery and conspiracy to rob a pharmacy, 18 U.S.C.A. § 2118(a) and (c)(1) (West 2000), and possession with the intent to distribute oxycodone, a controlled substance, 21 U.S.C.A. § 841(a)(1) (West 1999). The indictment alleges that on November 3, 2005, Osborne and McCrae robbed

Walgreen's pharmacy on Lee Highway in Bristol, Virginia, and stole a quantity of a controlled substance.

McCrae has moved in advance of trial to suppress certain OxyContin tablets found in his pants pocket during a pat-down by a police officer, as well as incriminating statements he gave to police following his arrest. I referred this motion to the Honorable Pamela Meade Sargent, United States Magistrate Judge, for recommendation pursuant to Fed. R. Crim. P. 59(b)(1). The magistrate judge conducted an evidentiary hearing and has recommended that I deny the Motion to Suppress. The defendant filed timely objections to the magistrate judge's recommendation, which objections I have considered de novo. *See* Fed. R. Crim. P. 59(b)(3). For the following reasons, I accept the magistrate judge's recommendation and deny the Motion to Suppress.

The facts as shown by the evidence at the hearing before the magistrate judge are not disputed; it is the legal conclusions from those facts that the defendant contests.[1]

The evidence shows that Jason Sexton, a deputy sheriff with the Washington County Sheriff's Department, received a report of a 911 call on November 3, 2005, at 10:59 P.M., requesting that he meet a female complainant at the Wal-Mart store on

---

[1] I have reviewed the transcript of the evidentiary hearing.

Lee Highway in Washington County. Sexton arrived at the Wal-Mart store shortly thereafter and met Michelle Sisto, the caller, who was accompanied by her child.

Sisto reported to Sexton that her husband, Osborne, had returned home late in the evening with McCrae. Upon Osborne's arrival, Sisto questioned him about his late return, which resulted in a slight verbal argument. Osborne responded that everything was going to be okay, and that they no longer needed to worry about Christmas. Sisto asked for further explanation, and Osborne told her that he had done something illegal.

She further reported to Sexton that upon their return, Osborne and McCrae acted suspiciously within the residence, manipulating cups in the kitchen cabinet. Upon Osborne and McCrae's leaving the area, Sisto inspected the cabinet and found white pill bottles containing small round pills.

Sisto then confronted Osborne about the pills and pill bottles, and a physical altercation occurred during which Osborne grabbed Sisto by the throat and slammed her against the wall. It was this encounter that prompted Sisto to call 911. Sexton took a written statement from Sisto, who also gave her consent for a search of the residence.

During his conversation with Sisto, Sexton recalled a be-on-the-lookout ("BOLO") broadcast issued at 9:55 P.M., an hour earlier, by the Bristol Virginia

Police Department.[2] It described a single armed robbery suspect, a white male wearing khaki shorts and a gray hooded sweatshirt, involved in a robbery of Walgreen's in Bristol, Virginia, in which certain controlled substances, including OxyContin, had been stolen. Sisto advised Sexton that Osborne was wearing clothing matching the BOLO description.

Sexton advised the Bristol Virginia Police Department of the possibility that he had identified the armed robbery suspect. Sexton soon was joined by three Bristol police officers at Wal-Mart. He and Sisto related the facts to them, and all concluded that Osborne and McCrae were likely suspects in the Walgreen's robbery. The officers proceeded to the Osborne residence for the primary purpose of arresting Osborne for domestic assault and the secondary purpose of investigating the robbery.

Upon arriving, the officers were met at the door by Osborne, who stepped back and allowed the officers inside. The officers made no show of force, and Osborne was immediately placed under arrest for domestic violence. Upon entering, Sexton saw McCrae standing in a doorway near the kitchen and dining room area. After seeing the officers, McCrae disappeared into the bedroom area of the house, out of sight. Sexton ordered him back and McCrae returned to the living room with his hands where officers could see them. Sexton then observed a large round bulge in

---

[2] Bristol is an independent city adjacent to Washington County, Virginia.

McCrae's front pants pocket protruding an inch or an inch and a half. Sexton told McCrae that he was going to pat him down for weapons.

Upon laying his hand on top of McCrae's pants pocket, Sexton could tell that the bulge was not a weapon, but he recognized the feel of what appeared to be small pills, moving to his touch. Sexton entered McCrae's pocket and removed a plastic baggie full of pills. Sexton then placed McCrae under arrest and handcuffed him.

After being placed under arrest, McCrae was walked directly to a patrol car and placed in the back seat. Sexton verbally advised McCrae of his *Miranda* rights. After refusing to respond to direct questioning as to where he had acquired the pills, McCrae thereafter made a spontaneous statement to Sexton on the way to the jail that Osborne had handed him the bag of pills in order to prevent Sisto from finding them. Upon being advised that McCrae and Osborne were suspects in the Walgreen's robbery, McCrae told Sexton that he had been present in the car during the robbery, but that he had not exited the vehicle nor was he aware of what had occurred.

II

In his Motion to Suppress, the defendant contends that the pills retrieved from his pants pocket as well as his statements made following his arrest must be excluded because they were obtained pursuant to an illegal search. The magistrate judge based

- 5 -

her recommendation to deny the Motion to Suppress on her finding that the police officer had probable cause to arrest McCrae at the time the search took place, making it a search incident to a valid arrest. The defendant objects to the magistrate's finding of probable cause, and I review the defendant's objection de novo. I turn first to the determination of whether there was probable cause.

Probable cause pursuant to a warrantless arrest exists where police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a reasonable belief that an offense is or has been committed by the person to be arrested. See *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause is based on more than "mere suspicion." *Wong Sun v. United States*, 371 U.S. 471, 479 (1963). Under *Ornelas v. United States*, 517 U.S. 690 (1996), I look to a two-fold determination to determine whether probable cause existed. First, I must review the historical facts incident to the arrest. *Id.* at 695. Next, I must determine whether these facts, when viewed from the perspective of a reasonable police officer, amounted to probable cause. *Id.* at 696-97.

After taking into consideration all of the facts and circumstances from the perspective of a reasonable police officer, I find that probable cause existed to arrest McCrae. Prior to arriving at the Osborne residence, Officer Sexton had knowledge that a robbery had recently occurred in Bristol, Virginia, in which prescription drugs

were stolen. He knew that Osborne, an individual meeting the description of the robber, had returned home late with McCrae, had made statements admitting that he had engaged in illegal activity, and had been violent toward Sisto. Sexton also knew that the two men had acted suspiciously upon returning home, and that Sisto had found pills and pill bottles in the kitchen cabinets near where Osborne and McCrae had been seen.

Upon arrival at the Osborne residence, Officer Sexton noticed a bulge in McCrae's pocket, permitting Sexton to lawfully engaged in a pat-down for weapons. *See Pennsylvania v. Mimms,* 434 U.S. 106, 111-12 (1977). When patting down McCrae for weapons, Sexton determined that the bulge was not a weapon, but appeared to be pills. While the pills were not immediately apparent as contraband, *see Minnesota v. Dickerson*, 508 U.S. 366, 378 (1993), a reasonable officer under the circumstances would have reasonably drawn a causal connection between the pills in McCrae's possession with the facts related to the pharmacy robbery. Thus, a review of the totality of the circumstances supports a determination that Officer Sexton then had probable cause to arrest McCrae.[3] I turn next to whether the search itself amounted to a Fourth Amendment violation.

---

[3] While Sexton testified that he had arrested McCrae for the unlawful possession of drugs, my inquiry hinges on an objective test: whether a reasonable police officer under the circumstances would have found sufficient facts and circumstances giving rise to probable cause. *Beck*, 379 U.S. at 91. For this reason, the subjective basis for Sexton's arrest is not relevant here.

The Fourth Amendment's protection against unreasonable searches and seizures generally requires police to secure a warrant before conducting a search. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). Accordingly, warrantless searches are generally rendered invalid unless they fall within "one of the narrow and well-delineated exceptions" to the Fourth Amendment's warrant requirement. *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999).

Here, probable cause to arrest McCrae gave rise to an established exception to the Fourth Amendment's warrant requirement. *United States v. Robinson*, 414 U.S. 218, 224 (1973). This exception provides that when law enforcement officers have probable cause to make a lawful custodial arrest, they may, incident to that arrest and without a warrant, search both the arrestee's person and the area within his immediate control, the area into which an arrestee might reach in order to gain control of a weapon or evidence. *Chimel v. California*, 395 U.S. 752, 763 (1969). As here, where Sexton had probable cause to arrest McCrae, a search inside his pants pocket, which the officer understood to likely contain evidence, was reasonable under the circumstances.

Upon reviewing all of the facts and circumstances available to Officer Sexton at the time of the search and arrest, I find that he had probable cause to arrest McCrae, and that his search was valid under an exception to the Fourth Amendment's warrant

requirement.  Accordingly, I will accept the magistrate judge's recommendation and deny the Motion to Suppress.

### III

For the foregoing reasons, it is **ORDERED** as follows:

1. The recommendation of the magistrate judge is ACCEPTED; and

2. The Motion to Suppress is DENIED.

                                       ENTER: June 16, 2006

                                       /s/ JAMES P. JONES
                                       Chief United States District Judge

- 9 -

Case 1:06-cr-00025-JPJ-PMS   Document 42   Filed 06/16/06   Page 9 of 9   Pageid#: 119